IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **JAMES CARMACK,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**CLEARPATH CONSULTING AGENCY LLC**, a Florida registered company, AND **SERENITY 1, LLC**, a California registered company,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff James Carmack ("Plaintiff Carmack" or "Carmack") brings this Class Action Complaint and Demand for Jury Trial against Defendant Clearpath Consulting Agency LLC ("Defendant Clearpath" or "Clearpath") and Defendant Serenity 1, LLC ("Defendant Serenity 1" or "Serenity 1") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded telemarketing calls to consumers without consent. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Carmack, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

1

## PARTIES

1.      Plaintiff Carmack is a resident of Ocala, Florida.

2.      Defendant Clearpath is a company registered in Florida and headquartered in Sanford, Florida. Defendant Clearpath conducts business throughout the US including in this District.

3.      Defendant Serenity 1 is a company registered in California and headquartered in San Diego, California. Defendant Serenity 1 conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Clearpath is headquartered in this District and the wrongful conduct giving rise to this case was directed from this District to the Plaintiff who resides in this District.

## INTRODUCTION

6.      As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints

2

about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in April 2026 alone, at a rate of 140.2 million per day. www.robocallindex.com (last visited May 17, 2026).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.    "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.    Clearpath provides timeshare exit services to consumers who are looking to terminate a timeshare agreement.[3]

15.    Clearpath is open about placing cold calls to generate business.

16.    In job postings for a sales intake specialist and a timeshare exit agent, Clearpath lists experience with cold calling as a preferred job requirement:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://cpathconsulting.com/about-us

4

**Tech Savvy:** Proficiency with CRM software (e.g., Salesforce, GoHighLevel, Hubspot) and standard office applications (Microsoft Office Suite, Google Workspace).

**Empathy:** A genuine desire to help people and an ethical approach to problem-solving.

Experience with cold calling or outbound sales is strongly preferred.

Ability to handle challenging conversations with professionalism, empathy, and resilience.

Strong communication and persuasion skills.

Call center experience is a plus, but not required.

Motivated, goal-oriented, and comfortable working in a fast-paced call center environment.

Position Details Role: Sales Intake Specialist

Location: Remote or on-site in Sanford, FL



 **Timeshare Exit Agent**
Clearpath Consulting Agency • Sanford, FL (On-site)

**What We're Looking For**
- Experience with **cold calling** or outbound sales is strongly preferred.
- Ability to handle challenging conversations with professionalism, empathy, and resilience.
- Strong communication and persuasion skills.
- Timeshare experience is a plus, but not required.
- Motivated, goal-oriented, and comfortable working in a fast-paced call center environment.

**Position Details**
- **Role:** Timeshare Exit Agent
- **Location:** Sanford, FL (Call Center Based)
- **Compensation:** Base pay + commission, uncapped earning potential

17.     Serenity 1 also provides timeshare exit services to consumers who are looking to terminate a timeshare agreement.[6]

18.     Clearpath advertises on its website that its contracts are fulfilled by Serenity 1:

---

[4] https://bebee.com/us/jobs/sales-intake-specialist-clearpath-consulting-agency-longwood-fl--theirstack-667668129

[5] https://www.linkedin.com/jobs/view/4294104453/?trackingId=MoWJw1s6Q3KUJudrm1lTPw%3D%3D

[6] https://sonecg.com/#about

> cpathconsulting.com/about-us
>
> Our contracts are fulfilled by **Serenity 1**, a company with an A+ rating from the Better Business Bureau and more than a decade of proven experience. [7]

19.    Clearpath and Serenity 1 jointly market a single, integrated service. Clearpath's website advertises a "100% Money Back Guarantee" framed as a joint promise of both Defendants, stating: "Clearpath Consulting Agency with fulfillment by Serenity 1 guarantee that you will receive a favorable outcome of your timeshare exit agreement within 24 months or you get 100% of your money back."[8]

20.    Clearpath markets itself to consumers using Serenity 1's business reputation. Clearpath's website displays an "A+ BBB Rated" badge that links directly to the Better Business Bureau profile for Serenity 1, LLC[9] in San Diego, California. Clearpath holds out Serenity 1's rating, history, and identity as its own to induce consumers to engage Defendants' services.

---

[7] https://cpathconsulting.com/about-us
[8] https://cpathconsulting.com
[9] https://www.bbb.org/us/ca/san-diego/profile/consultant/serenity-1-llc-1126-1000082862



21.     Clearpath states elsewhere on its website that it is a consulting company that coordinates with Serenity 1 for fulfillment services:

*Last Updated: February 25, 2026*

**General Disclaimer**
The information provided by Clearpath Consulting Agency on this website and through our services is for general information purposes only. All information is provided in good faith; however, we make no representation or warranty of any kind, expressed or implied, regarding the accuracy, adequacy, validity, reliability, availability, or completeness of any information.

**No Guarantees of Results**
**Results may vary.** Every timeshare situation is unique, and outcomes depend on numerous factors including by not limited to the specific terms of your contract, applicable laws, and the cooperation of third parties. Past performance and results do not guarantee future outcomes. We cannot and do not guarantee that you will achieve any specific result, recovery amount, or timeline.

**Not Legal or Tax Advice**
**Clearpath Consulting Agency is not a law firm and does not provide legal advice.** We are a consulting company that coordinates with Serenity 1 LLC for fulfillment of services from licensed professionals, including attorneys, certified public accountants (CPAs), enrolled agents, and licensed brokers, who provide services within their respective areas of licensure.

The information on this website and any communications from our team should not be construed as legal, tax, or financial advice. For specific legal, tax, or financial questions, please consult with an appropriately licensed professional.

**Professional Relationships**
Serenity 1's partner attorneys, CPAs, brokers, and other professionals are independent practitioners. While Serenity 1 carefully selects their professional partners, we do not control their advice or actions. Any professional relationship you establish through our services is between you and that professional directly. [10]

22.     Serenity 1 is directly involved in the marketing Clearpath engages in when calling and screening consumers to generate sales for Serenity 1.

23.     Serenity 1's own website confirms that it operates through a network of intake personnel, analysts, and professionals who "handle every part of the process

---

[10] https://cpathconsulting.com/disclaimer

from start to finish" and "work seamlessly to support every case."[11] Serenity 1 thus controls and directs the fulfillment of the very leads that Clearpath generates through its telemarketing.

24.    The Defendants work together to place pre-recorded calls to consumers to generate business.

25.    In a Facebook post, a consumer posted about a call they received from Serenity 1. In response, another consumer claimed that they received the exact same voicemail from Clearpath:



[11] https://sonecg.com/
[12] https://www.facebook.com/groups/welkresortowners/posts/124225878750890l/

26.     Other consumers added comments to this Facebook post, complaining about calls they received from the Defendants:



27.     Serenity 1 is aware of, consented to, and/or acquiesced in Clearpath's making telemarketing phone calls to customers using a pre-recorded voice message.

28.     Serenity 1 is aware of and received leads generated from the telemarketing phone calls from Clearpath.

29.     Serenity 1 pays Clearpath, or has a financial incentive set-up for each lead that Clearpath generates for Serenity 1.

---

[13] Id.

30. The pre-recorded scripts quoted below in the plaintiff's allegations solicit consumers for a "timeshare exit program" to "legally exit their agreements and explore potential recovery options." These are the same timeshare-cancellation and financial-recovery services that Serenity 1 advertises and fulfills. The calls were designed to, and did, generate leads for the services Serenity 1 provides, for Serenity 1's economic benefit.

31. This is evident from the language presented on Clearpath's website stating, "We (Clearpath) are a consulting company that coordinates with Serenity 1 LLC for fulfillment of services…"[14]

32. The Federal Communication Commission has instructed that companies such as Serenity 1 may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

---

[14] https://cpathconsulting.com/disclaimer

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling") (citations omitted).

33.   Defendants jointly publish an identical "Consumer Alert" web page on both Clearpath's website[15] and Serenity 1's website,[16] acknowledging that telephone calls referencing Defendants and their services are being placed to consumers. The publication of a coordinated, identical consumer alert across both Defendants' websites further reflects that Clearpath and Serenity 1 operate as a single, integrated enterprise and that Serenity 1 is aware telemarketing is being conducted in connection with the services it fulfills.

34.   Serenity 1 is liable for the willful TCPA violations of its agent, Clearpath, committed within the scope of Serenity 1's authority.

35.   Serenity 1 ratified Clearpath's conduct by accepting the economic benefits of the leads Clearpath generated through its pre-recorded calling campaign, with full knowledge that Clearpath was placing pre-recorded calls to consumers on Serenity 1's behalf.

---

[15] https://cpathconsulting.com/consumer-alert
[16] https://sonecg.com/consumer-alert

11

36.    In response to these calls, Plaintiff Carmack brings forward this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF CARMACK'S ALLEGATIONS

37.    Plaintiff Carmack is the sole owner and user of his cell phone number ending in 1417.

38.    Since late 2024, Plaintiff Carmack has been receiving unsolicited calls regarding a timeshare, including timeshare exit services.

39.    Plaintiff Carmack has never owned a timeshare.

40.    On April 14, 2026, Plaintiff Carmack received an unsolicited call to his cell phone from 855-765-9557.

41.    This call was not answered, but a pre-recorded voicemail was left stating:

> "Hi, this is Sarah with Clearpath calling regarding an important update about your timeshare. Today is Tuesday, April 14th, and we wanted to connect with you briefly. We're contacting you because there may be concerns about whether your consumer rights were fully protected during your original purchase or any upgrades. Many owners have shared experiences involving high pressure sales, unclear terms, or expectations that didn't match what they were promised over time. If any of that sounds familiar, you may qualify for assistance through a timeshare exit program that helps owners legally exit their agreements and explore potential recovery options. To begin your free prequalification review, please call 855-211-5612. Again, that number is 855-211-5612. We look forward to speaking with you soon. If you receive this message in error, please let us know so we can update our records."

12

42.    Plaintiff could tell that this voicemail was pre-recorded because it begins with 2 seconds of dead silence followed by a click as the employee begins to speak. The voicemail sounds scripted and contains no details specific to Plaintiff Carmack.

43.    On April 15, 2026 at 3:43 PM, Plaintiff Carmack received an unsolicited call to his cell phone from 833-506-7910.

44.    This call was not answered, but a pre-recorded voicemail was left stating:

> "Hi, this is Jessica with Clearpath Consulting calling regarding important update about your timeshare. Today is Wednesday April 15th, and we wanted to connect with you briefly. We're contacting you because there may be concerns about whether your consumer rights were fully protected during your original purchase or any upgrades. Many owners have shared experiences involving high pressure sales, unclear terms, or expectations that didn't match what they were promised over time. If any of that sounds familiar, you may qualify for assistance through a timeshare exit program that helps owners legally exit their agreement and explore potential recovery options. To begin your free prequalification review, please call 833-679-2174. Again, that number is 833-679-2174. We look forward to speaking with you soon. If you receive this message in error, please let us know so we can update our records."

45.    On April 16, 2026 at 5:56 PM, Plaintiff Carmack received an unsolicited call to his cell phone from 833-774-8385.

46.    This call was not answered, but a pre-recorded voicemail was left stating:

"Hi, this is Jessica with Clearpath Consulting calling regarding important update about your timeshare. Today is Thursday April 16th, and we wanted to connect with you briefly. We're contacting you because there may be concerns about whether your consumer rights were fully protected during your original purchase or any upgrades. Many owners have shared experiences involving high pressure sales, unclear terms, or expectations that didn't match what they were promised over time. If any of that sounds familiar, you may qualify for assistance through a timeshare exit program that helps owners legally exit their agreements and explore potential recovery options. To begin your free prequalification review, please call 833-679-2174. Again, that number is 833-679-2174. We look forward to speaking with you soon. If you receive this message in error, please let us know so we can update our records."

47.     Plaintiff could tell that both of the voicemails from Jessica, as detailed above, were pre-recorded because they both feature dead silence before the message plays, and the script that's being spoken is nearly identical.

48.     On April 17, 2026 at 10:06 AM, Plaintiff Carmack received an unsolicited call to his cell phone from 833-475-1103.

49.     This call was not answered, but a pre-recorded voicemail was left stating:

"Hi, this is Rachel with Clearpath Consulting calling regarding an important update about your timeshare. Today is Friday, April 17th, and we wanted to connect with you briefly. We're contacting you because there may be concerns about whether your consumer rights were fully protected during your original purchase or any upgrades. Many owners have shared experiences involving high pressure sales, unclear terms, or expectations that didn't match what they were promised over time. If any of that sounds familiar, you may qualify for assistance through a timeshare exit program that helps owners legally exit their agreements and explore recovery options. To begin your free prequalification review, please call 855-756-0706. Again, that number is 855-756-0706. We look forward to speaking with you soon. If you receive this message in error, please let us know so we can update our records."

14

50. Plaintiff believes that this voicemail was pre-recorded because it begins with the same dead silence, followed by a click and the voice of the employee. As with previous voicemails, the message is generic and nothing specific is mentioned about Plaintiff Carmack.

51. On April 17, 2026 at 3:32 PM, Plaintiff Carmack received an unsolicited call to his cell phone from 917-651-0740.

52. This call was not answered, but a pre-recorded voicemail was left stating:

"Hi, good afternoon, my name is Ashley and I'm calling from Clearpath Consulting Agency. We work for a timeshare exit firm, and the reason for our call is because 80% of Wyndham timeshares are sold under consumer right violations, so we were calling to see if you would like some more information on that, and maybe some assistance from our attorneys in regards to legally exiting out of your timeshare agreement and helping you recoup some of the money you have invested into your property. So if you would like some information on that, please feel free to give me a call back today. Our phone number here is 833-781-1180. Again, my name is Ashley and our number here is 833-781-1180. Hope you're having a great day and look forward to speaking with you. Bye bye."

53. Plaintiff Carmack could tell that this voicemail was pre-recorded because it begins with 5 seconds of dead silence. When the voice message begins, there is a noticeable change in the background sound as the employee speaks. There is 13 seconds of dead silence after the employee finishes speaking, indicating the use of a pre-recorded message.

15

54.    Plaintiff has never provided his cell phone to the Defendants, and he does not have a timeshare that he can terminate an agreement for.

55.    The unauthorized solicitation calls that Plaintiff received from the Defendants have harmed Plaintiff Carmack in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

56.    The voicemails also took up space on Plaintiff's cell phone, and Plaintiff felt harassed by the calls he received from the Defendants.

57.    Seeking redress for these injuries, Plaintiff Carmack, on behalf of himself and a Class of similarly situated individuals, brings this suit under the TCPA.

## CLASS ALLEGATIONS

58.    Plaintiff Carmack brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **<u>Pre-recorded/Artificial Voice No Consent Class</u>:** All persons in the United States whose cellular telephone number was called by Defendants using an artificial or pre-recorded voice, from four years prior to the filing of this action through the date of class certification.

59.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current

16

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Carmack anticipates the need to amend the Class definition following appropriate discovery.

60. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

61. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether the Defendants placed pre-recorded/artificial voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c) Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

17

62.    **Adequate Representation**: Plaintiff Carmack will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Carmack has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Carmack and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Carmack nor his counsel have any interest adverse to the Class.

63.    **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Carmack. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis.

A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Carmack and the Pre-Recorded/Artificial Voice No Consent Class)**

64.    Plaintiff Carmack repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65.    The Defendants transmitted unwanted telephone calls to Plaintiff Carmack and the other members of the Pre-recorded/Artificial Voice No Consent Class using a pre-recorded voice message.

66.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded/ Artificial Voice No Consent Class.

67.    The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded/Artificial Voice No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

19

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)   An award of money damages and costs;

c)   An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)   An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Carmack requests a jury trial.

> **JAMES CARMACK**, individually and on behalf of all others similarly situated,

DATED this 27th day of May, 2026.

> By: /s/ *Stefan Coleman*
>
> Stefan Coleman (Fla. Bar No. 30188)

20

COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman (Fla. Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*Lead Attorney